# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC M. WILLIAMS,<br><br>               Plaintiff,<br><br>v.<br><br>T. AMAY, *et al.,*<br><br>               Defendants. | Case No. 1:17-cv-01332-AWI-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION TO DISMISS BE DENIED**<br><br>(ECF No. 16)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

The Court has before it the motion to dismiss filed by Defendants, Teresita Amay, Navdeep Baath, and Dr. Bunn (ECF No. 16). For the reasons discussed below, the Court recommends that the Motion to Dismiss (ECF No. 16) be denied.

**I.  Background**

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. On October 4, 2017, Plaintiff commenced this action by the filing of a Complaint alleging, among other things, that Defendants denied him Wellbutrin even though he has a medical need for the medication, and that they denied him Wellbutrin in retaliation for his verbal conduct of asserting his need for Wellbutrin and asserting his rights under prison regulations. (ECF No. 1.) On December 29, 2017, the Court screened the Complaint, and found that it states cognizable claims against Defendants for deliberate indifference to serious medical needs in violation of the Eighth Amendment and for retaliation

1

in violation of the First Amendment. (ECF No. 8.)

On March 13, 2018, Defendants filed a motion to dismiss all claims against them, citing various grounds for dismissal, including failure to state a claim entitlement to qualified and sovereign immunity. (ECF No. 16.) Plaintiff filed his opposition to dismissal on March 27, 2018. (ECF No. 22.) Defendants filed their reply in support of their motion to dismiss on April 4, 2018. (ECF No. 23.) Plaintiff filed another copy of his opposition to dismissal on April 12, 2018. (ECF No. 24.)

**II.     Allegations in Complaint**

The Complaint alleges that Plaintiff suffers from severe episodes of depression that may lead him to commit suicide, that he has attempted suicide in the recent past, that the prescription drug Wellbutrin "cures" Plaintiff's depression and dismisses his thoughts of suicidal ideation, that alternative medications do not work and have negative side effects, and that Plaintiff's life thus depends on receiving Wellbutrin. (ECF No. 1 at 4-5.)

Plaintiff alleges that he was prescribed Wellbutrin to treat his depression and suicidal ideation. Wellbutrin is effective and cures Plaintiff's depression and dismisses his thoughts of suicidal ideation. (*Id.*) Plaintiff has a documented therapeutic failure with the formulary alternatives to Wellbutrin, including Prozac, Celexa, Remeron, Paxil, Lexapro, Effexor, and Trazadone, and has had negative side effects from these alternatives. (*Id.*) Thus, Plaintiff has a serious medical need for Wellbutrin.

Plaintiff alleges that Defendants have denied his requests for Wellbutrin even though he has a serious medical need for that medication. Plaintiff alleges that by denying him access to Wellbutrin, Defendants have acted with deliberate indifference to Plaintiff's serious medical needs. Plaintiff also alleges that Defendants have withheld Wellbutrin from him in retaliation for his conduct of requesting/insisting on being prescribed Wellbutrin, attempting to explain his need for Wellbutrin and why alternative medications are insufficient and do not work, and asserting his rights under Title 15 of the California Correctional Regulations. (*Id.*)

Defendant Dr. Baath, a prison psychiatrist, has repeatedly prescribed Wellbutrin to treat Plaintiff's depression. On February 9, 2017, Dr. Baath submitted a drug request for Plaintiff to

2

receive Wellbutrin. However, Defendant Dr. Bunn, who is Dr. Baath's superior, denied the drug request. Dr. Bunn, who has never met with, examined, or had any other personal contact with Plaintiff, thus overrode the prescription recommendation of Dr. Baath, who examined and has been treating Plaintiff.

Plaintiff sought to discuss his need for Wellbutrin with Defendant Dr. Amay. Plaintiff attempted to explain to Dr. Amay that Plaintiff had tried alternative medications for his depression but the alternatives did not work and resulted in negative side effects. Plaintiff also tried to discuss with Dr. Amay the requirements of, and Plaintiff's rights under, Title 15 of the California Correction Regulations ("CCRs"). Dr. Amay responded, "Shut up you drug addict, you are not getting any Wellbutrin, now go back to your cell." (ECF No. 1 at 4.)

Defendants—Dr. Baath, Dr. Amay, and Dr. Bunn—subsequently had a meeting to discuss Plaintiff's request for Wellbutrin. At this meeting, Defendants raised the issue of Plaintiff citing regulations in support of his request for Wellbutrin. Defendants did not like Plaintiff's presentation, his lack of cooperation, and his assertion of his rights under Title 15 of the CCRs. Defendants decided to deny Plaintiff the medication Wellbutrin in retaliation for Plaintiff's conduct. (*Id.* at 5; *see also id.* at 7 (document indicating that Defendants Baath, Amay, and Bunn met regarding Plaintiff's request for Wellbutrin, and stating: "Given his presentation with me and Dr. Amay and his non-cooperation with the process for the approval of non-formulary medication it was decided that we will not be able to approve his Wellbutrin at this time.").)

Plaintiff alleges that the consultation meeting between Defendants was not "about the recommended course of treatment or [Plaintiff's] request for Wellbutrin," but was instead "actually about how Dr. Amay despised" Plaintiff, his presentation and his lack of cooperation, and so that Dr. Amay and Dr. Baath "could convince Dr. Bunn to deny the Wellbutrin" as retaliation for Plaintiff's "exercising his First Amendment right of 'freedom of speech [sic].'" (*Id.* at 4.)

### III. Analysis

Defendants seek dismissal of Plaintiff's complaint on the following grounds: (a) the

3

complaint fails to state a claim upon which relief can be granted for Eighth Amendment deliberate indifference or for First Amendment retaliation; (b) Defendants are entitled to qualified immunity on Plaintiff's retaliation claims; (c) Defendants are entitled to sovereign immunity from Plaintiff's claims for damages against them in their official capacities; (d) Plaintiff's claims for damages for mental and emotional injuries are barred by 42 U.S.C. § 1997e(e); and (e) Plaintiff's state law claims are barred for failure to allege compliance with the California Government Claims Act. (ECF No. 16 at 1-2.)

A. Failure to State a Claim under Rule 12(b)(6)

Defendants contend that the complaint fails to state a claim upon which relief can be granted for Eighth Amendment deliberate indifference or for First Amendment retaliation.

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

*1. Claim for Eighth Amendment Deliberate Indifference*

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires

4

plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; and (2) "the defendant's response to the need was deliberately indifferent." *Id*. (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. at 836-37 & n.5 (1994) (citations omitted).

Plaintiff alleges in his Complaint that he suffers severe episodes of depression that may lead him to commit suicide, that he has attempted suicide in the recent past, that Wellbutrin "cures" Plaintiff's depression and dismisses thoughts of suicidal ideation, and that Plaintiff's life thus depends on receiving Wellbutrin. (ECF No. 1 at 4-5.) These allegations are sufficient to establish that Plaintiff has a serious medical need. *See Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017-18 (9th Cir. 2010) ("[W]e have previously recognized that a heightened suicide risk can present a serious medical need.").

Defendants admit that the allegations of the Complaint are sufficient to establish that Plaintiff has a serious medical need, but contend that the Complaint does not allege facts demonstrating that Defendants knew of and ignored Plaintiff's serious medical need. (ECF No. 16-1 at 6.) The Court disagrees.

Plaintiff alleges that Dr. Baath submitted a request that Plaintiff be prescribed Wellbutrin based on Dr. Baath's determination that Wellbutrin was currently medically necessary, that

5

Plaintiff has documented therapeutic failure with formulary alternatives, and that Plaintiff told Dr. Baath and attempted to tell Dr. Amay about these failures. (*Id.* at 4-5.) The Complaint also alleges that Plaintiff suffers from severe episodes of depression that may lead him to commit suicide, that he has attempted suicide in the recent past, that Wellbutrin "cures" Plaintiff's depression and dismisses thoughts of suicidal ideation, and that Plaintiff's life thus depends on receiving Wellbutrin. (*Id.*) Plaintiff alleges that Defendants had a meeting to discuss Plaintiff's requests for Wellbutrin, and made the decision to deny him Wellbutrin based purely on non-medical reasons, and that notes from that meeting demonstrate this.

It can be inferred from the allegations in the Complaint that Defendants were aware that Plaintiff suffered from depression; that the depression required Wellbutrin; and that there was an increased risk of suicide if the depression was not appropriately and successfully treated with Wellbutrin. (*See* ECF No. 1 at 4-5; *see also* ECF No. 22 at 5 (Plaintiff asserting in his opposition to dismissal that "Defendants are very well aware of his history of suicidal ideation.").)

Accordingly, the Court finds that the Complaint sufficiently states a claim for deliberate indifference to a serious medical need against Defendants. *See Simmons*, 609 F.3d at 1017-18 (heightened suicide risk can present a serious medical need); *White v. Crow Ghost*, 456 F.Supp.2d 1096, 1102 (D.N.D. 2006) (bare allegations of depression did not show serious medical need, but plaintiff's suicide gestures did).

### 2. *Claim for First Amendment Retaliation*

Within the prison context, a viable claim of First Amendment retaliation consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A plaintiff suing for retaliation under § 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not

advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. *Rhodes*, 408 F.3d at 569.

Plaintiff alleges that Defendants retaliated against him because of his exercise of free speech rights under the First Amendment. He alleges that he attempted to discuss with Dr. Amay that he had already taken all the offered alternative medications and the negative side effects those alternative medications had on him; and to discuss and assert his rights under CCR Title 15.

Plaintiff alleges that Defendants had a meeting that was purportedly for the purpose of discussing a plan of treatment for Plaintiff, but that the meeting was actually for the purpose of discussing how Dr. Amay despised Plaintiff's assertion of his rights under CCR Title 15, and Plaintiff's "presentation" and lack of cooperation; and so that Dr. Amay and Dr. Baath could convince Dr. Bunn to deny the Wellbutrin. (ECF No. 1 at 4-5.) Plaintiff alleges he was denied Wellbutrin not because Wellbutrin was not medically indicated but instead in retaliation for his exercise of protected conduct. (ECF No. 1 at 4; *see* ECF No. 22 at 2, 5-7.) In support of his allegations, Plaintiff cites to a report that he has attached to the Complaint. This report confirms that a meeting took place between the Dr. Baath, Dr. Amay, and Dr. Bunn and states that Wellbutrin was denied because of Plaintiff's "presentation with me [Dr. Baath] and Dr. Amay and his non-cooperation with the process for the approval of non-formulary medication." (ECF No. 1 at 7.)

For purposes of their 12(b)(6) argument, Defendants do not dispute that Plaintiff "may have a constitutionally protected right to request Wellbutrin" (ECF No. 16-1 at 7), and do not otherwise dispute that Plaintiff has sufficiently alleged that he engaged in protected conduct for purposes of the retaliation claim (*id.* at 7-8). Instead, Defendants argue that the denial of the request for Wellbutrin cannot be an adverse action giving rise to a claim for retaliation. (*Id.*; ECF No. 23 at 6-7.) In support of their argument, Defendants rely on *Singh v. Washburn*, No. 2:14-CV-01477-SB, 2016 WL 1039705, at *7 (D. Or. Feb. 5, 2016), *report and*

1 *recommendation adopted*, No. 2:14-CV-01477-SB, 2016 WL 1045523 (D. Or. Mar. 15, 2016).

In *Singh*, the plaintiff's administrative grievance complaining of exposure to toxic mold was denied and the plaintiff was told by the defendant that his subsequent grievances were duplicative. 2016 WL 1039705, at *7. The court found Plaintiff's allegations insufficient to establish retaliation:

> The fact that his grievances were rejected or denied, consistent with prison regulations, does not suffice to warrant any inference that the rejection or denial was retaliatory. If that were the case, a First Amendment retaliation claim would arise every time an inmate was dissatisfied with the outcome of a grievance proceeding or a Department of Corrections official made a mistake in handling an administrative grievance. The law requires the existence of a causal link between the exercise of a protected right and adverse action taken by a prison official sufficient to deter a person from exercising his rights. Singh's bare allegation that Defendant Reynolds rejected his grievance because of an alleged retaliatory motive is not enough to satisfy the first element of a retaliation claim [adverse action].

*Id.*

Here, in contrast to *Singh*, the Complaint alleges that Plaintiff had been prescribed Wellbutrin by Dr. Baath, but that Plaintiff was ultimately denied this medication in retaliation for his protected conduct of seeking to obtain Wellbutrin, seeking to explain why alternative medications did not work, and citing to and asserting his rights under CCR Title 15. Plaintiff alleges that he directly spoke to and exercised his rights to Dr. Amay, and that Dr. Amay, Dr. Baath, and Dr. Bunn all met; that this meeting was for the purposes of discussing Plaintiff's conduct in asserting his rights, including his "presentation" and "non-cooperation," and convincing Dr. Bunn to deny Wellbutrin; and that all three Defendants were involved in denying Wellbutrin in retaliation to Plaintiff's assertion of his rights to Dr. Amay.[1]

Further, and contrary to the argument of Defendants, the denial of medical treatment can be an adverse action—if the denial of treatment is in retaliation for Plaintiff's exercise of

---

[1] Defendants also argue, in their reply brief, that Plaintiff does not sufficiently allege that Dr. Baath and Dr. Bunn were aware of Plaintiff's statements to Dr. Amay. (ECF No. 23 at 7.) The Court disagrees and finds that it can be inferred from the allegations in the Complaint that all Defendants were aware of Plaintiff's assertion of his rights to Dr. Amay. (*See* ECF No. 1 at 4-5 (alleging that all Defendants met to discuss how Dr. Amay despised Plaintiff's presentation and lack of cooperation, and so that Dr. Amay and Dr. Baath could convince Dr. Bunn to deny the Wellbutrin).)

8

protected conduct, as Plaintiff alleges, and the denial of treatment does not advance legitimate penological goals,[2] the denial is an adverse action for purposes of a claim of retaliation in violation of the First Amendment. *See, e.g., Deets v. Castilo*, No. 3:08-CV-00655-RCJ, 2010 WL 4340834, at *5 (D. Nev. Oct. 26, 2010) ("Plaintiff states colorable First Amendment retaliation claims" by alleging "that he was denied asthma medication in retaliation for his complaints and grievances seeking asthma medication"; "that he was refused medication to manage his ongoing pain in retaliation for grievances he filed seeking medical treatment"; and "that he was refused psychiatric medication in retaliation for filing kites and his grieving this issue.").

Accordingly, the Court finds the Complaint sufficiently states a colorable First Amendment retaliation claim.

B. Qualified Immunity on Retaliation Claim Only

Defendants argue that even if Plaintiff has sufficiently alleged a claim for retaliation in violation of the First Amendment, the claim is foreclosed because Defendants are entitled to qualified immunity. (ECF No. 16-1 at 8-9.) For the reasons discussed below, the Court disagrees.

The doctrine of qualified immunity protects Defendants from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

To survive a challenge based on qualified immunity, a plaintiff must (1) allege facts that show the defendant's actions violated a constitutional right; and (2) demonstrate that the right was "clearly established" at the time of the officer's conduct. *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As discussed

---

[2] Defendants do not contend that the denial of Wellbutrin advances any legitimate penological goal.

above, Plaintiff has sufficiently alleged that Defendants violated his First Amendment rights. The Court will therefore turn to the question of whether those rights were clearly established at the time of Defendants' conduct.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation omitted).

In the context of retaliation claims, it is clearly established that retaliation against prisoners for engaging in protected conduct violates the First Amendment. *See Rhodes*, 408 F.3d at 567-68; *see also Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) ("Retaliation against prisoners for their exercise of this [First Amendment right to file grievances] is itself a constitutional violation, and prohibited as a matter of "clearly established law."); *Williams v. Delfine*, No. EDCV 08–0533 CBM MLG, 2008 WL 5245976 at *5 (C.D. Cal. Dec. 12, 2008) ("[Defendant] is not entitled to qualified immunity on the allegations raised by Plaintiff .... A long line of Ninth Circuit cases [has] found a variety of retaliatory action by corrections officers to violate the First Amendment."); *see also Deets*, 2010 WL 4340834, at *5 (finding valid claim for retaliation where Plaintiff alleged he was denied medications in retaliation for his complaints and grievances seeking the medication).

Defendants argue, however, that it was not clearly established in early 2017, when they allegedly engaged in retaliatory conduct, that verbal complaints or a verbal assertion of rights, as opposed to written grievances or written complaints, were protected conduct for purposes of a claim of retaliation.[3] The Court disagrees.

As Defendants point out, neither the Ninth Circuit nor the Supreme Court has decided

---

[3] While "a prison inmate retains . . . First Amendment rights," *Pell v. Procunier*, 417 U.S. 817, 822 (1974), "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system," *Price v. Johnston*, 334 U.S. 266, 285 (1948). Thus, conduct that may be protected outside the prison setting may not be protected conduct in the prison setting.

10

whether a prisoner's verbal complaints constitute protected conduct. *See Torres v. Arellano*, No. 1:15-cv-00575-DAD-MJS, 2017 WL 1355823, at *13 (E.D. Cal. Mar. 24, 2017) (recognizing the lack of Ninth Circuit or Supreme Court authority on the issue).

However, there are numerous cases from district courts in California holding that a prisoner's verbal complaints or assertions of rights are protected conduct for purposes of a claim of retaliation. These cases fall into four major categories.

The first category of cases deny qualified immunity, finding both that a prisoner's verbal conduct is protected conduct for purposes of a retaliation claim, and that the right to be free from retaliation for such conduct is clearly established. *See, e.g., West v. Dizon*, No. 2:12–cv–1293-MCE-DAD, 2014 WL 794335, at *5, *9-*10 (E.D. Cal. Feb. 27, 2014) (finding protected speech includes a prisoner's verbal expression of an intent to submit a formal written grievance, and noting "the prohibition against retaliatory punishment is 'clearly established law' for qualified immunity purposes"); *Hackworth v. Torres*, No. 1:06–CV–773–RCC, 2011 WL 1811035, at *1-3,*6 (E.D. Cal. May 12, 2011) (finding protected speech includes prisoner's verbal assertions or argument with initial classification committee regarding prison policies; rejecting the defendants' argument that only filing written grievances constitutes protected conduct; and finding "it is clearly established that retaliation against a prisoner for exercise of his First Amendment rights is prohibited"); *Uribe v. McKesson*, No. 08-cv-01285-DMS-NLS, 2011 WL 9640, at *12 (E.D. Cal. Jan. 3, 2011) (finding the "prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit for qualified immunity purposes"; that a prisoner's reporting of misconduct, either verbally or in writing, constitutes protected conduct; and that "there is no 'legal distinction between the filing of a charge which is clearly protected, and [verbally] threatening to file a charge'") (citations and ellipses omitted); *see also Merrick*, 2015 WL 9999194, at *5-6 (Recommending denying without prejudice motion to dismiss based on qualified immunity, and rejecting argument that Plaintiff's verbal complaint is not protected conduct, but declining to decide "clearly established right" issue: "Without deciding the issue, the Court has reason to doubt that the form of a grievance is a proper distinction to be drawn in terms of a 'clearly established

right.'"), *findings and recommendation adopted*, 2016 WL 447796 (C.D. Cal. Feb. 4, 2016).

The second category of cases find a plaintiff's verbal conduct is protected conduct for purposes of a retaliation claim, but grant qualified immunity based on the court's determination that it was not clearly established at the time of the alleged retaliation that verbal complaints are protected conduct. *See Torres v. Arellano*, No. 1:15-cv-00575-DAD-MJS, 2017 WL 1355823, at *8-*9, *12-*13 (E.D. Cal. Mar. 24, 2017) (finding that plaintiff stated a claim for retaliation based on protected conduct of verbal complaint, but granting qualified immunity based on determination that it was not clearly established at the time of the retaliation (2014) that verbal complaints are protected conduct); *Williams v. Bahadur*, No. 2:13–cv–2052–TLN–EFB, 2016 WL 758782, at *5-6 (E.D. Cal. Feb. 26, 2016) (finding that plaintiff sufficiently alleged that he engaged in protected conduct by verbally protesting a job assignment, but granting motion for qualified immunity because "it was not well-established in 2011 that a verbal protest constituted conduct protected by the First Amendment"); *Ahmed v. Ringler*, No. 2:13-CV-1050-MCE-DAD, 2015 WL 502855, at *7 (E.D. Cal. Feb. 5, 2015) ("plaintiff's verbal complaint about the July 2, 2012 search and seizure of his property constitutes protected conduct under the First Amendment for purposes of a retaliation claim," but recommending granting qualified immunity because "it was not clearly established [in 2012] that a prisoner's verbal complaint (as opposed to filing a formal grievance or lawsuit) constituted protected conduct under the First Amendment for purposes of a retaliation claim"), *report and recommendation adopted*, 2015 WL 1119675 (E.D. Cal. Mar. 11, 2015).

In the third category is a case in which qualified immunity was granted without deciding whether verbal conduct is protected, and instead determining only that it was not clearly established at the time of the alleged retaliatory conduct that verbal conduct is protected. *See Turner v. Zuniga*, No. CV 13–1787–MMM (AGR), 2015 WL 5265442, at *3-4 (C.D. Cal. Apr. 15, 2015) (recommending granting qualified immunity on the plaintiff's retaliation claim because it was not clearly established in 2009 that an inmate's verbal threat to file a lawsuit was protected conduct), *report and recommendation adopted*, 2015 WL 5286031 (C.D. Cal.

Sept. 9, 2015).[4]

In the fourth category of cases are cases that have been cited by some district courts in California for the proposition that the law is not clearly established on this issue but upon closer examination reveal that the court's decision was based on a different and distinguishable ground. For example, in *Johnson v. Carroll*, No. 2:08-cv-1494-JAM-KJN P, 2012 WL 2069561, at *34 (E.D. Cal. June 7, 2012), *report and recommendation adopted*, 2012 WL 3756483 (Aug. 28, 2012), the verbal conduct at issue was a prisoner's verbal challenge to a defendant's strip search. The court characterized the plaintiff's verbal conduct as being "argumentative, confrontational, and disrespectful," and "laced with expletives." *Id.* The court determined this conduct to be "verbal insubordination," that was "proscribed by the legitimate goal of maintaining order and discipline within correctional institutions," and accordingly not protected speech. *Id.* Thus, this court's holding was not that verbal conduct is not protected, but instead that the specific verbal conduct engaged in by the plaintiff was prohibited as verbal insubordination and for that reason was not protected conduct. *See id.*

In *Teahan v. Wilhelm*, No. 06CV15JMPCL, 2007 WL 5041440, at *8, *10 (S.D. Cal. Dec. 21, 2007), *report and recommendation adopted as modified*, 2008 WL 877842 (Mar. 28, 2008), the verbal conduct at issue was plaintiff's verbal objection to a prison guard's confiscation and removal of the plaintiff's personal property. *Id.* at *9. The plaintiff claimed that the defendant retaliated against the plaintiff by searching the plaintiff's cell for a second time and taking additional property belonging to the plaintiff. *Id.* The court declined to decide whether the plaintiff's verbal objection was protected conduct, and instead determined that the plaintiff could not state a claim for retaliation because the alleged retaliatory conduct—the second search of the plaintiff's cell and confiscation of property—served a legitimate correctional goal. *Id.*

In *Christ v. Deberry*, No. 2:10-cv-1786-LKK-KJN, 2013 WL 1087801, at *18 (E.D. Cal.

---

[4] In *Turner*, the verbal conduct at issue was the plaintiff's threat to sue the defendants. The court found that "there does not appear to be a consensus on" whether an inmate's verbal threat to file a grievance or a lawsuit was protected conduct for purposes of a claim of retaliation. 2015 WL 5265442, at *3. However, the court did not cite to many of the cases discussed herein that find verbal conduct to be protected. *See id.* at *3-*4.

13

Mar. 13, 2013), the verbal conduct at issue was the plaintiff's verbal threat to file an appeal. The court noted that it had not located "any authority for finding an inmate's threat to file an appeal 'constitutionally protected conduct.'" *Id.* at *19. The court did not, however, specifically hold that the verbal conduct was not protected but instead went on to analyze the other elements of a retaliation claim and found that the plaintiff had not established those additional elements. *Id.* The court found that the plaintiff not only failed to demonstrate that there was a causal connection between his verbal conduct and the alleged retaliatory conduct, but that the alleged retaliatory conduct engaged in by the defendant "was both reasonable and justified by prison policy, thereby supporting the further finding that defendant's conduct served a legitimate penological purpose." *Id.*

Based on the Court's review of the case law, the Court finds that the existing precedent in this district and the other districts in California had placed beyond debate in early 2017 that verbal conduct is protected conduct for purposes of a retaliation claim.[5] *See Williams*, 2016 WL 758782, at *5-6 (prisoner sufficiently alleged that he engaged in protected conduct by verbally protesting a job assignment); *Ahmed*, 2015 WL 502855, at *7 (plaintiff's verbal complaint about search and seizure of his property constitutes protected conduct); *Merrick*, 2015 WL 9999194, at *5-6 ("the Court has reason to doubt that the form of a grievance is a proper distinction to be drawn in terms of a 'clearly established right'"); *West*, 2014 WL 794335, at *9-*10 (protected speech includes a prisoner's verbal expression of an intent to submit a formal written grievance); *Hackworth*, 2011 WL 1811035, at *1-3,*6 (protected speech includes prisoner's verbal assertions or argument with initial classification committee regarding prison policies); *Uribe*, 2011 WL 9640, at *12 (prisoner's verbal reporting of

---

[5] None of the cases cited by Defendants hold that verbal conduct is not protected by the Constitution. Defendants rely on *Ahmed,* 2015 WL 502855, and *Christ*, 2013 WL 1087801, in support of their argument that it was not clearly established in 2017 that an oral complaint is protected under the First Amendment. This reliance is misplaced. (*See* ECF No. 16-1 at 8-9; ECF No. 23 at 9.) As discussed above, in *Ahmed* the court found that a verbal complaint is protected conduct but found qualified immunity appropriate because it was not clearly established *in 2012* that such conduct was protected. 2015 WL 502855, at *7. In *Christ* the court did not find that verbal conduct was not protected but instead found the plaintiff had not established a causal connection between his verbal conduct and the alleged retaliatory conduct and, further, that the alleged retaliatory conduct engaged in by the defendant "was both reasonable and justified by prison policy, thereby supporting the further finding that defendant's conduct served a legitimate penological purpose." 2013 WL 1087801, at *18-*19.

14

misconduct constitutes protected conduct).

Turning to the facts of the present case, it is clearly improper and unconstitutional for a prison official to deny medication because an inmate requests medication or cites to a regulation that the inmate believes gives him the right to such medication. *See, e.g., ibid.; Deets*, 2010 WL 4340834, at *5 (finding valid claim for retaliation where Plaintiff alleged he was denied medications in retaliation for his complaints and grievances seeking the medication). Further, it was clearly established in early 2017 that Plaintiff's verbal conduct in requesting the medication and citing to a prison regulation is protected conduct for purposes of a claim of retaliation. *See ibid.* Defendants are, accordingly, not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

C. <u>Sovereign Immunity</u>

Defendants seek dismissal of Plaintiff's claims to the extent the claims are brought against them in their official capacity. (ECF No. 16-1 at 9.)

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); *see Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007) (state officials sued in their official capacities are generally entitled to Eleventh Amendment immunity).

However, there is an important exception to Eleventh Amendment immunity for state officials sued in their official capacity—when a suit seeks prospective injunctive relief, the state official "in his official capacity is considered a 'person' for § 1983 purposes," and is not entitled to Eleventh Amendment immunity. *Flint*, 488 F.3d at 825 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). The Eleventh Amendment also does not bar suits seeking damages against state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Here, Plaintiff has not specified in the Complaint whether he sues Defendants in their individual or official capacities, or both. (*See* ECF No. 1.) In terms of relief, Plaintiff seeks (1) an order requiring Defendants to provide him with Wellbutrin, and (2) monetary damages.

15

(ECF No. 1 at 3.)

The Court assumes that, to the extent Plaintiff is seeking damages, he is suing Defendants in their individual capacities only, as any claim for damages against them in their official capacities is barred by the Eleventh Amendment. *See Flint*, 488 F.3d at 824-25 (state officials sued for damages in their official capacities are entitled to Eleventh Amendment immunity); *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994) ("Where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities.");

To the extent Plaintiff is seeking prospective injunctive relief, the claims can proceed against Defendants in both their individual and official capacities. *See Flint*, 488 F.3d at 824-25.

D. <u>Damages for Mental and Emotional Injuries</u>

Defendants argue that to the extent Plaintiff is claiming damages based on mental or emotional injury, those claims are barred under the Prison Litigation Reform Act ("PLRA"). (ECF No. 16-1 at 10 (citing 42 U.S.C. § 1997e(e).) Because the Complaint does not explicitly claim damages for mental or emotional injury, there is no need to address Plaintiff's entitlement to such relief, and the Court declines to do so.

E. <u>State Law Claims</u>

As Defendants point out, the Complaint indicates Plaintiff is seeking to bring a state law claim for medical malpractice. (ECF No. 1 at 10.) Defendants argue that this state law claim is barred for failure to allege compliance with the California Government Claims Act (the "Claims Act").[6] (ECF No. 16 at 10-11 (citing Cal. Gov't Code § 945.4).)

In California, before bringing a tort claim against a state entity or state employees, a plaintiff must comply with the claim presentation requirement of the Claims Act by timely presenting the claim to the state and the claim must either have been acted upon or deemed rejected by the board (the Department of General Services). Cal. Govt. Code §§ 900.2, 910,

---

[6] State-imposed procedural conditions to sue apply to Plaintiff's state law malpractice claim. *See Ortega v. O'Connor*, 764 F.2d 703, 707 (9th Cir. 1985), *rev'd on other grounds*, 480 U.S. 709 (1987); *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969 (failure to comply with state-imposed procedural conditions to sue the state bars maintenance of a cause of action based upon those state law claims).

16

911.2, 945.4, 950, 950.2.; *State v. Superior Court of Kings County (Bodde)*, 32 Cal. 4th 1234, 1245 (2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988). Further, "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement" or be "subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." *State v. Superior Court (Bodde)*, 32 Cal.4th at 1243.

Here, the Complaint does not specifically allege that Plaintiff complied with or is excused from complying with the claim presentation requirement of the Claims Act.[7] This does not, however, end the claims presentation inquiry because the Complaint does allege that Plaintiff provided the state with notification of his claim. Specifically, the Complaint alleges that Plaintiff "notified CDCR that he intended to bring a medical malpractice law suit against them in 90 days," as required by California Code of Civil Procedure § 364.[8] (ECF No. 1 at 10-11.)

In *Phillips v. Desert Hospital District*, 780 P.2d 349 (Cal. 1989), the California Supreme Court addressed the impact of a § 364 notice in the context of the claim presentation requirement of the Claims Act. In that case, the plaintiff claimed injuries arising out of a surgery she had at the defendant's hospital, which was a public entity. *Id.* at 352. The plaintiff provided the defendant hospital with a § 364 notice, notifying the hospital of the claim, the incident underlying the claim, and the intent to sue on the claim for damages. *Id.* After 90 days had elapsed without receiving a response from the hospital, the plaintiff filed an action against the defendant hospital and the plaintiff's treating physicians alleging, among other things, claims for negligence. *Id.* The defendant hospital demurred to the complaint on the ground that the plaintiff had failed to allege compliance with the claim presentation requirement of the

---

[7] Although Plaintiff contends in his opposition brief that he complied with the Claims Act (ECF No. 22 at 2), Plaintiff's contention in his brief cannot serve as a substitute for an allegation in the Complaint. Plaintiff's contention does, however, indicate that, if needed, he could amend his Complaint to allege facts demonstrating that he complied with the claim presentation requirement of the Claims Act. As discussed *infra*, such amendment is not needed because the allegations in the Complaint are sufficient.

[8] Section 364 of the California Code of Civil Procedure provides, in relevant part,
    (a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.
    (b) No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.
Cal. Civ. Proc. Code § 364(a), (b).

Claims Act. *Id.* The trial court sustained the demurrer and dismissed the complaint. *Id.* That dismissal was reversed on appeal.

The California Supreme Court agreed that the § 364 notice did not substantially comply with the claim presentation requirement of the Claims Act,[9] but did not find this lack of substantial compliance to be dispositive. Rather, the "dispositive issue" was whether the plaintiff's "364 notice triggered the notice and defense-waiver provisions of the act," §§ 910.8,[10] 911,[11] and 911.3[12] *Id.* at 353.

The court found the 364 notice to be a "defective claim" under the Claims Act and that this defective claim triggered the Claims Act notice and waiver provisions. *See id.* at 355 ("[A] notice, such as plaintiffs' 364 notice, which discloses the existence of a claim that if not paid or

---

[9] Section 910 sets out the information that is required to be included in a claim, including the name and address of the claimant; the address to which the person presenting the claim wants notices sent; the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted"; "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim"; the "name or names of the public employee or employees causing the injury, damage, or loss, if known; "[t]he amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim . . . [i]f the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case." Cal. Gov't Code § 910.

[10] Section 910.8 provides: "If, in the opinion of the board or the person designated by it, a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, or with the requirements of a form provided under Section 910.4 if a claim is presented pursuant thereto, the board or the person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein." Cal. Gov't Code § 910.8.

[11] Section 911 provides: "Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to the defect or omission as provided in Section 910.8, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant." Cal. Gov't Code § 911.

[12] Section 911.3 provides, in relevant part:

(a) When a claim that is required by Section 911.2 to be presented not later than six months after accrual of the cause of action is presented after such time without the application provided in Section 911.4, the board or other person designated by it may, at any time within 45 days after the claim is presented, give written notice to the person presenting the claim that the claim was not filed timely and that it is being returned without further action. . . .
(b) Any defense as to the time limit for presenting a claim described in subdivision (a) is waived by failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant.

Cal. Gov't Code § 911.3.

otherwise resolved will result in litigation, must be treated as a defective 'claim' activating the notice and defense-waiver provisions of the act, sections 910.8, 911, and 911.3.") The court explained:

> A public entity's receipt of written notice that a claim for monetary damages exists and that litigation may ensue places upon the public entity the responsibility, and gives it the opportunity, to notify the potential plaintiff pursuant to sections 910.8 and 911 of the defects that render the document insufficient under sections 910 and 910.2 and thus might hamper investigation and possible settlement of the claim. Such a written notice claiming monetary damages thereby satisfies the purposes of the claims act—to facilitate investigation of disputes and their settlement without trial if appropriate.
>
> . . . .
>
> Thus, if a public entity receives a document that alerts it to the existence of a claim and the possibility of a lawsuit but fails to comply substantially with sections 910 and 910.2, the purposes of the [Claims Act] are best served by requiring the public entity to notify the claimant of the nature of the claim's insufficiencies or lack of timeliness or else waive, by operation of sections 911 and 911.3, its defenses based on those deficiencies.
>
> Inasmuch as the hospital failed to notify plaintiffs of the insufficiencies in their 364 notice that rendered it defective to comply substantially with sections 910 and 910.2, the hospital waived any defenses it may have otherwise asserted based on such insufficiencies. Further, as it failed to notify plaintiffs of any timeliness defects, the hospital has similarly waived any defenses it might have raised on the ground of plaintiffs' asserted failure to present a timely claim.

*Id.* at 356-57 (citations omitted).

Here, Plaintiff alleges that he provided a § 364 notice. (ECF No. 1 at 10-11.) Under *Phillips*, a § 364 notice is a "defective claim" for the purposes of claim presentation under the Claims Act, and triggers the notice and defense-waiver provisions of the Claims Act. *See id.*

The allegation that Plaintiff provided the § 364 notice is sufficient to allege compliance with the claim presentation requirements of the Claims Act. *See id.* (reversing dismissal of complaint where the plaintiff alleged she provided a § 364 notice but did not allege compliance with the Claims Act); *see also Watts v. Valley Med. Ctr.*, 10 Cal. Rptr. 2d 794, 800 (Ct. App. 1992) ("service of a Code of Civil Procedure section 364 notice upon a governmental agency, although a defective claim, is a 'claim as presented' triggering the notice and defense-waiver provisions of the Tort Claims Act") (citing *Phillips v. Desert Hosp. Dist.*, 780 P.2d 349 (Cal. 1989)).

///

## IV. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss (ECF No. 16) be DENIED.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **fourteen (14) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**August 31, 2018**__ /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE